**IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court.**

RECEIVED
IN ALEXANDRIA, LA.

FEB 1 9 2010

TONY R. MOORE, CLERK
BY_____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES STEVENSON,<br>    Appellant | CIVIL ACTION<br>SECTION "P"<br>NO. 1:09-CV-02234 |
| VERSUS | |
| ALFONZO PACHECO, et al.,<br>    Appellee | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

An evidentiary hearing was held this day on Stevenson's motion for injunctive relief (Doc. 4).

Stevenson's original complaint, filed on December 28, 2009, alleges that his constitutional rights have been and are being violated by defendants Dr. Alfonzo Pacheco, Warden Tim Wilkinson, and Patricia G. Thomas, all employed at the Winn Correctional Center ("WCC") in Winnfield, Louisiana. Stevenson also named Corrections Corporation of America's[1] insurer as a defendant. Stevenson contends that, while he was confined in WCC in 2009 through the present, defendants have denied him appropriate medical care for an infected diabetic ulcer on his left foot.

---

[1] Corrections Corporation of America is the private operator of the Winn Correctional Center.

In his motion for injunctive relief (Doc. 4), Stevenson contends he was taken to the emergency room at LSU medical center on November 18, 2009, for the infected wound on his foot, and that the doctor there prescribed medication. Stevenson contends his next appointment at LSU medical center, on January 11, 2010, was cancelled by Dr. Pacheco (Doc. 4).

The undersigned verbally ordered defendants to provide Stevenson's medical records; defendants sent medical records dated through January 11, 2010, and advised the court over the telephone that Stevenson had an appointment at LSUMC on January 28, 2010 (Doc. 5). Defendants were then ordered to update the medical records provided to the court (Doc. 6), in response to which defendants provided Stevenson's recent medical records from LSUMC, but not his medical records from WCC (Doc. 8). In order to determine exactly what occurred with Stevenson's medical appointments and treatment, the undersigned ordered defendants to be served and set this matter for an evidentiary hearing. Stevenson's most recent medical records from WCC and LSUMC were proffered by defendants at that hearing.

1.

The January 28, 2010 medical records from LSU medical center show Stevenson was sent to have his foot wound, diabetes, and hypertension checked (Doc. 8). Dr. Isherwood at the Primary Care Facility noted the two-year-old ulcer on Stevenson's left foot and

2

made an appointment for Stevenson to go to the diabetic "foot" (limb/wound care) clinic. The LSU records indicate both that an appointment was made for "Monday at 9 a.m.," which would have been February 1st, and also one was made that day for March 22nd (Doc. 8).

Patricia Thomas, the Health Care Administrator at WCC, testified that Dr. Pacheco had Stevenson taken to the emergency room at LSUMC in November 2009 because of the diabetic wound on his foot. Dr. Pacheco testified that he had been treating the wound through removal of the calluses in an attempt to open the wound to air, and application of both moisture and antibiotic ointment. Dr. Pacheco testified that, when the wound appeared to have deepened and was not healing, he decided to get a second opinion; he sent Stevenson to the emergency room because he would be seen there more quickly than if an appointment was made for him at the LSUMC Primary Care Facility. Dr. Pacheco testified that Stevenson's wound was treated in the emergency room and he was returned to WCC with instructions to Dr. Pacheco to continue the same treatment he had been giving.

Thomas further testified that, unbeknownst to WCC officials, an appointment was made for Stevenson by LSUMC at the LSUMC Diabetic Limb/Wound Care Clinic for December 14, 2009; WCC received notice of the appointment on December 17, 2009. Thomas testified that Stevenson's appointment at the LSUMC Diabetic Limb/Wound Care

3

Clinic was then rescheduled for January 11, 2010. Thomas and Dr. Pacheco both testified that, on January 10th, Dr. Pacheco cancelled Stevenson's January 11 appointment because Stevenson already had an appointment at the LSUMC Primary Care Facility scheduled for January 28, 2010.

On February 1, 2010, Dr. Pacheco cancelled the March 22, 2010 appointment at the Diabetic Limb/Wound Care Clinic, thinking it was unnecessary. Dr. Pacheco testified that he cancelled Stevenson's March 22, 2010 appointment because both the emergency room physician in November 2009 and the Primary Care Facility doctor on January 28, 2010 had advised him to continue his current treatment Stevenson's foot wound, and because Stevenson had a pending "telemed" video-conference appointment with the LSUMC dermatology clinic.[2]

On March 4, 2010, Dr. Pacheco decided to reschedule Stevenson's appointment with the LSUMC Diabetic Limb/Wound Care Clinic; no reason was noted for rescheduling. Although the order setting this case for an evidentiary hearing was dated February 2, 2010 (Doc. 6), Dr. Pacheco testified that he is not sure when he

---

[2] Thomas testified that the Primary Care Facility does triage and assessments, while the Diabetic Limb/Wound Care Clinic does chronic care for people with diabetes. Both Thomas and Dr. Pacheco emphasized that WCC also has a diabetes care clinic, for which Dr. Pacheco is the physician. Although that may be, it is noted that none of Stevenson's medical records from WCC bear a diabetes clinic heading, and that the WCC diabetes clinic does not employ a specialist.

4

became aware of Stevenson's lawsuit and the evidentiary hearing.

2.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition. Estelle, 97 S.Ct. at 291. Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

Although the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive *adequate* medical care. A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar

5

conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 463-464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Also, Chapman v. Johnson, 339 Fed. Appx. 446, **2 (5th Cir. 2009)(fact that defendant was aware that inmate had a serious injury and was instructed to provide pain relieve medication, but did not do so, could demonstrate an Eighth Amendment violation).

Sending Stevenson to LSUMC and then refusing to follow the LSUMC physician's advice and recommendations for follow up care rises to the level of a constitutional violation, contrary to the warden's mistaken belief. See Footnote 3, below.

After hearing the evidence, the undersigned finds the January 11, 2010 appointment with the Diabetic Limb/Wound Care Clinic should not have been cancelled; the January 28, 2010, appointment was not with the Diabetes Limb/Wound Care Clinic and thus was not an appropriate substitute.[3] Likewise, the initial cancellation of

---

[3] The warden also suggested that the treatment prescribed by outside physicians is nothing more than a recommendation, and that the WCC physician, in this case Dr. Pacheco, does not have to follow those recommendations. However, the court notes that Dr. Pacheco provides general medical services for inmates at WCC, and does not purport to be a specialist. Therefore, from an evidentiary standpoint, this court will seldom, if ever, accept a differing opinion as to treatment of an inmate (including scheduling necessary appointments and prescribing medication) from a general physician over that of a specialist, in cases where the medical specialty is applicable. See Federal Code of Evidence rule 702.

the March 22, 2010, appointment with the Diabetic Limb/Wound Care Clinic was inappropriate, particularly after both the emergency room and primary care facility physicians had referred Stevenson there.

Therefore, Stevenson's motion for injunctive relief should be granted and defendants ordered to make an appointment for plaintiff James Stevenson with the Diabetic Wound/Limb Care Clinic at LSU Medical Center, the appointment to be scheduled within twenty days. If the Diabetic Wound/Limb Care Clinic is unable to schedule an appointment within that time, defendants should be ordered to schedule Stevenson's appointment at the next available time and report the appointment date and time to the court *in writing* as soon as possible.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Stevenson's motion for injunctive relief (Doc. 4) be GRANTED.

IT IS FURTHER RECOMMENDED that defendants be ORDERED to make an appointment for plaintiff James Stevenson with the Diabetic Wound/Limb Care Clinic at LSU Medical Center, the **appointment to be scheduled to occur within twenty days**. If the Diabetic Wound/Limb Care Clinic is unable to schedule an appointment within that time, defendants should be ORDERED to schedule Stevenson's appointment at the next available appointment time, and report the appointment date and time to the court *in writing* as soon as possible.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the court is shortening the time: the parties have **five (5) calendar days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **five (5) calendar days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FIVE (5) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 18th day of February, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE